Ch. J. Barry
delivered (he opinion oi'the Court.
John Bailey and Mary, his wife, late Mary .Duncan, instituted a suit in chancery, in the Bath circuit court, . . , •> ? ' 7 against the executrix ana devisees oí Isaac Duncan, sen. for a division and distribution qf his estate. The bill charges, that the testator died possessed of considerable estate, real and personal; that the executrix, Margaret, had continued in possession of the land, since the death of her husband, receiving the-rents and profits; that she was in possession of a negro woman, Martha, devised to her by the testator, with the increase, viz. Amy, Lucy, Jesse and Jefferson; and that she only had a life estate in the slaves. The bill prays for distribution of the personal estate, ?nd account of the hire of slaves, rents and profits of the land, and for general relief.
Margaret Duncan, the executrix, in her- answer, claims the slaves as her own property; slates that she has made a just distribution amongst the heirs, of the personal estate; that she is not accountable for the yepts and profits of the’land; thut it was a small tract *21 oí' about ninety-three acres, which she retained the possession of until dower was assigned her, since vvhich her possession has been confined to the pare allotted for jier dower; that she has improved theland, and greatly enhanced the value of the inheritance to the children. Bhe also insists on a claim to three shares of the land, under the will of her son, Isaac Duncan.
Answer of other dofen-g““sfss,bi|in<i
Complainants’ answer Across bilí. •
Decree of fte circuit court
jsaan d'ó*.-can’s wiji.
The other defendants do not deny the allegations of the bill. They claim their just portions in the division sought for by the complainants. Margaret Duncan, and William Lawson and Priscilla, his wife, make their answer a cross bill; allege that the complainants-had parted with their interest in the land, by contract with Isaac Duncan, jun. who had devised it to said Margaret for life, remainder to Priscilla Lawson in fee; and pray that the complainants may convey to them accordingly.
The complainants resist the claim set -up in the cross bill, and charge the contract with Isaac Duncan, jun. to have been obtained from them by fraud. They also insist that Mary Bailey is not bound by (he contract of her husband, and ought not to be compelled to convey her estate in the land, as she is to do so.
Upon the final hearing of the cause, the court dismissed the complainants’ bill, with'costs. On the cross bill, the court decreed the land to be divided amongst the heirs, subject to the widow’s dower, and directed (■he complainants to convey agreeably to the contract with Isaac Dune,an, jun.
To reverse the decree that dismisses the bill ,of the complainants, they prosecute this writ of error. The propriety of the decree on the cross bill, is not now questioned.
The first subject to be considered, is the claim set up by the complainants to the slaves, under the will of Isaac Duncan, sen. The part of the will touching this devise, and which may serve to explain it, is in the following words:
“And as touching my worldly goods, wherewith it has pleased Almighty God to bless me with, I give and bequeath in manner and form following: First of all, my will and desire is, that all my lawful debts shall be paid by my executors, out of my estate, and those debts which are due to me, collected by my executors. Next, I will and bequeath unto my beloved wife, Margaret, item one negro girl named Martha. Next, I will *22 and bequeath to my daughter, Sarah, ten shillings. Next, I give and bequeath the balance of my estate to be equally divided amongst the rest of my children.”
Ne words of inheritance arc necessary in a devise, to pass the entire estate in a slave.
(íood=, do not, technically,include slaves; but, in a devise, may embrace them. — Concordant in principle, 1 Monroe 28.
The rule of construction insisted on by the complainants, that requires words of limitation to pass a fee, had its origin in the feudal code, and was designed to operate as a restraint upon the alienations of landed property. The courts in England have labored to emancipate themselves from the rigor of this rule. They readily lay hold of any words to avoid it, and effectuate the intention of the testator, it has accordingly been settled, that the word estate, will, when coupled with the devise, comprehend the interest, as well as describe the thing, and pass a fee; that this word may be transposed from the preamble or other parts of the will, and annexed to the devise, to fulfil the intention of the testator. Guthrie vs. Guthrie, 1 Call’s Rep. 7; Davis vs. Miller, 1 Call 131.
All judges, ancient and modern, concur in saying, that the intention of the testator is to give the rule of construction. It is now the governing principle, emphatically said to be the polar star, to guide our decisions, and to>which all other rules of construction must yield. See Kenar vs. M'Roberts, 1 Wash. Rep. 96, and the numerous cases there cited. Let us now apply this principle to the case before us. It was the intention of the testator to dispose of his whole estate, without reserve or limitation. The whole complexion of the will proves this, and shows that he intended to give the slave absolutely to his wife. In the commencement, he declares his intention to dispose of all the worldly goods with which it had pleased God to bless him. Technically, the word goods does not include land or slaves; but who can doubt that this unlettered testator intended by this expression to comprehend all his property, of every description? It appears from the face of the will, that he was an ignorant man. In such case, no inference is to be drawn, from the want of tech-nichal words, unfavorable to a liberal and enlarged, construction of the devise. But, lucidly, the will contains a word that will more certainly give effect to the-testator’s intention. The word estate, is found in the .commencement and conclusion, before and after the particular devise. Immediately preceding it, he directs his executors, out of his estate; to pay ail his debts, *23 and afterwards provides that the balance of his estate shall be equally divided amongst the rest of his children. Couple this word with the devise, and upon the authority of the cases cited, it passes the fee. Another plain view is presented. If the testator intended that his wife should have a life estate only, is it not reasonable to suppose, more, especially as he had but one slave, that in the latter part of the will, where he finally disposes of all the rest of his estate, he would have directed what'was to be done with the slave and her probable increase, at the death of his wife? The court are so fully satisfied that a fee in the slave passed to the wife by the devise, according to acknowledged and well settled rules of law, that it is not deemed necessary to resort for aid to the act of assembly, which provides that a fee shall pass without words before necessary to transfer an estate of inheritance.
The m!;y expend, oA^mfant distributees, to pay physio^ns &main-sickness,
such case, ^ere tl™ smaj] t¡ie will not> after ma^n-be held Pr°ve the the instance their repre-sentatlves‘ . .
As to the personal estate of the testator, it is in proof that the complainant, Mary Bailey, received her tributable share, before her marriage with John Bailey; but they claim a portion of the shares of the three infant children of the testator, who died without issue, and, as they allege, without having received their respective shares of the personal estate. It appears from tne proot in the cause, that the testator died in 1803; that his wife qualified as executrix, in the month of June of the same year; that she had charge of á family of children, with but scanty means for their support. The difficulties that she must necessarily encounter, were increased by sickness. Four of the dren died. The expence of physicians and attendance, necessarily incurred, must have been considerable, Nancy is proved to have been very'sickly. The ecutrix, in the account rendered in her answer, states that she expended on each of the decedents, more than their distributable share. The amount each was enti-tied to, of the personal estate, was only §'49 20. dcr existing circumstances, with proof that physicians were employed to attend the children, considering that the mother took care of them in helpless infancy, nursed them in sickness, paid the doctors’ bills and funeral cxpcnccs, (he court must consider her account reasonable, and allow it. We are aware, of (he rule that protects the money of infants, and allows the interest only te> be used for maintenance and education ;t but do not *24 consider it impugned, when the money is necessarily employed to relieve, m case of distress and sickness. There is express authority to authorise it. Hennings vs. Conner, 2 Bibb 190. There is another reason for allowing the account of the executrix, as she states it. The personal estate came to her hands in 1803; the complainants filed their bill in the year 1820. After the lapse of seventeen years, it would be unreasonable, on account of the death of witnesses and probable loss of papers, especially for so small a claim, to subject the executrix to the expence of further accounting. It has been refused by the chancellor, in similar cases, after lapse of a much shorter time. 3 John. Ch. Rep. 586; 2 John. Ca. 432; 2 Atk. 610.
‘Phis court will not re-cree°correct in all other respects, and cecdín^bc-low to correct anerrorinal-1,owing uQwcr indifferSiT ° land.
The question as to the land, remains to be eonsider-ed. The tract of about ninety-throe acres was purchased and paid for by the testator, who improved and resided on it some years before his death. It does not appear that he held any written contract for the title; but after his death, upon the application of his heirs, ^1C kin<^ was C01iveyed to them by Capt. John Fowler, for the consideration of £110, paid by their ancestor, as expressed in the deed. The land was conveyed joint! v {0 pile husbands of the females and the other children of the testator. In the year 1817, after the death of James Duncan and William Ireland'DunCan, two of the testator’s children who died without issue, the corn--plainant, John Bailey, sold his own and hie wife’s interest in the land, to her brother, Isaac Duncan, jun.' received the consideration, and executed his bond for the title. The interest thus acquired, with his own as one of the heirs, Isaac devised to his mother, Margaret, for life, remainder in- fee to bis sister, Priscilla Lawson. The alleged'fraud in the purchase made by Isaac of the' complainant, is not proved. How far this sale by the husband; will divest the wife of her title, need not now be decided. It is binding on the husband, and the purchaser will be protected, during the joint lives of Bailey and his wife. The complainants show themselves entitled lo a small interest in the land, acquired by the death of a sister, Nancy Duncan, subsequently to the sale to Isaac. This, ascertained to be one acre and seventy-six poles, is allotted them in the division decreed on the cross bill, subject to the widow’s claim of 'flower. The injustice, if any has been done the com- *25 plainarils, is in allowing the claim of dower on this small parcel of land. If the widow is entitled to dower, no injur/ has been done. Is it necessary to investigate this matter, with a view to afford relief, if it results favorably to the complainants? This small portion of an indifferent tract of land, remotely situated, with no adventitious circumstance to enhance its value, the whole of which originally was purchased for £10, is too inconsiderable to justify the expence that must be incurred. The cost of surveying alone, it is believed, would be equal to its value. It is not considered, in such a case, that it would be discreet or useful, for the court to interfere; on the contrary, that it would bo oppressive, arid without any beneficial result to cither party. The circuit court did right in dismissing the complainants’ bi.ll.
Triole.lt, for plaintiffs; Bibb, for defendants.
Tho decree is affirmed with costs, See.